521 S.E.2d 744

**STATE of South Carolina, Respondent,**

v.

**Aubin LIBERTE and William Henry Sims, Jr., Appellants.**

**No. 3035.**

Court of Appeals of South Carolina.

Heard May 11, 1999.

Decided Aug. 16, 1999.

Rehearing Denied Nov. 6, 1999.

William G. Yarborough, III, of Ashmore & Yarborough, of Greenville, for appellants.

Attorney General Charles M. Condon, Chief Jonathan E. Ozmint and Assistant Attorney General Anne Hunter Young, both of State Grand Jury, all of Columbia, for respondent.

PER CURIAM:

Aubin Liberte and William Henry Sims, Jr. appeal from their convictions for conspiracy to traffic in cocaine. We reverse and remand for a new trial.

## I.

According to the State's evidence, Todd Brank, a convicted drug dealer, was under investigation by the South Carolina Law Enforcement Division (SLED). After he was arrested on more drug charges, Brank agreed to cooperate with SLED. Operating undercover, Brank set up a purchase of a large amount of cocaine from Sims, who had previously supplied cocaine to Brank. Liberte, whom Brank did not know and had never seen before, was in the car with Sims when Sims delivered the cocaine to Brank. After Sims and Liberte were taken into custody, Liberte consented to a search of his hotel room. SLED agents found more cocaine in the hotel room, and arrested Herne Bouzy, who apparently was staying in Liberte's hotel room. Liberte, Sims, and Bouzy were indicted by the State Grand Jury for conspiracy to traffic in cocaine.

Although none of the defendants testified at trial, their attorneys, through their cross-examination of the State's witnesses and their closing arguments, suggested that the drugs had been planted by Brank. The attorneys also raised questions about SLED's investigation, noting, among other things, SLED's apparent failure to test for fingerprints the box containing cocaine delivered by Sims to Brank and SLED's erasing of a tape of a conversation between Brank and Sims. The jury convicted Liberte and Sims (together, the Defendants), but acquitted Bouzy.

## II.

On appeal, the Defendants argue, *inter alia*, that the trial court erred in refusing to grant a mistrial following inflammatory and prejudicial remarks made by the prosecutor in his closing argument. We agree.

■ At the beginning of his closing argument, apparently in response to the Defendants' suggestion that the drugs had been planted and their attacks on SLED's investigation, the prosecutor stated:

Ladies and gentlemen, I want to ask you right now to listen to the judge's instructions about reasonable doubt, and *ask yourselves is it being used as a sword to attack law and order, to attack law enforcement, to attack people who are trying to keep drugs off our streets?*

(Emphasis added). After the Defendants' objection, the trial court simply instructed the prosecutor to "refrain from commenting about that." The court twice denied requests that the matter be taken up outside the presence of the jury. After more defense objections to the prosecutor's closing argument, the trial court excused the jury. The Defendants moved for a mistrial based on the cumulative effect of the prosecutor's improper remarks, but the court denied the motion.[1]

■ "A solicitor's closing argument must not appeal to the personal biases of the jurors. In addition, the argument may not be calculated to arouse the jurors' passions or prejudices, and its content should stay within the record and reasonable inferences to it." *State v. Copeland,* 321 S.C. 318, 324, 468 S.E.2d 620, 624 (1996). The trial court is vested with broad discretion when considering "the propriety of the solicitor's argument, including the question of whether to grant a defendant's mistrial motion. The trial court's discretion will

---

1. The State contends that this issue is not preserved for appeal because the trial court gave the Defendants the relief they sought by instructing the prosecutor to "refrain from commenting about that," and the Defendants sought no further relief. We disagree. When the improper comment was made, the trial court refused the Defendants' requests to excuse the jury. The Defendants therefore could not have requested further relief at that time. *See, e.g., State v. McDaniel,* 320 S.C. 33, 37, 462 S.E.2d 882, 884 (Ct.App.1995) ("So long as the judge had an opportunity to rule on an issue, and did so, it was 'not incumbent upon defense counsel to harass the judge by parading the issue before him again.' "), *cert. denied* (July 7, 1995); Rule 18(a), SCRCrimP ("Counsel shall not attempt to further argue any matter after he has been heard and the ruling of the court has been pronounced."). The Defendants sought a mistrial at their first opportunity, when the court later excused the jury. Under these circumstances, the Defendants' actions were more than sufficient to preserve the issue for appeal.

not be overturned absent a showing of an abuse of discretion amounting to an error of law that prejudices the defendant." *Id.* (Citation omitted). In this case, we conclude that the trial court abused its discretion by denying the Defendants' request for a mistrial.

■ Certainly, a prosecutor is entitled to call into question the credibility of a defense. *See, e.g., State v. Lunsford,* 318 S.C. 241, 246, 456 S.E.2d 918, 922 (Ct.App.1995) ("In telling the jury, 'so don't fall for that,' the solicitor was merely telling the jury that it should not credit defense counsel's argument regarding the absence of fingerprint evidence. A prosecutor may fairly point out 'matters which [the jury] should not consider.' "), *cert. denied* (October 20, 1995). Likewise, a prosecutor may "legitimately appeal to the jury to do their full duty." *State v. Caldwell,* 300 S.C. 494, 504, 388 S.E.2d 816, 822 (1990). In this case, however, the prosecutor's argument went far beyond the outer boundaries of proper closing argument.

■ In our view, the argument was calculated to appeal to the jury's passions and prejudices by playing on the jury's fear of the impact of drugs on our society. The argument invited the jury to convict the Defendants, even if the evidence did not prove their guilt beyond a reasonable doubt, in order to keep the streets safe from the scourge of drugs.[2] Such an appeal is clearly improper:

---

2. This aspect of the argument was bolstered by the following statement, which followed shortly after the prosecutor's improper reasonable doubt argument:

> I want to talk to you a minute about the agents. Ladies and gentlemen, I get tired—I get tired of seeing law enforcement officers attacked for no reason, quite frankly, to be perfectly honest with you. Cops, always dirty, planting evidence, making things up. I think such attacks ... are beneath contempt.

After an objection and an admonishment by the court not to express his personal opinion, the prosecutor continued:

> I express that such attacks are beneath contempt. These officers worked weeks in Greenville and Spartanburg Counties, to bring you this conspiracy. They developed informants. They work[ed] nights. They worked weekends. They put it on the line. And every time they testify, every time, they get attacked.

In our view, this argument was an improper appeal to the jury's emotions and an attempt to induce the jury to identify with the law enforcement officers involved in the case.

A prosecutor may not urge jurors to convict a criminal defendant in order to protect community values, preserve civil order, or deter future lawbreaking. The evil lurking in such prosecutorial appeals is that the defendant will be convicted for reasons wholly irrelevant to his own guilt or innocence. Jurors may be persuaded by such appeals to believe that, by convicting a defendant, they will assist in the solution of some pressing social problem. The amelioration of society's woes is far too heavy a burden for the individual criminal defendant to bear.

*United States v. Monaghan*, 741 F.2d 1434, 1441 (D.C.Cir. 1984), *cert. denied*, 470 U.S. 1085, 105 S.Ct. 1847, 85 L.Ed.2d 146 (1985); *see also United States v. Hawkins*, 595 F.2d 751, 754 (D.C.Cir.1978) (Prosecutors are not "at liberty to substitute emotion for evidence by equating, directly or by innuendo, a verdict of guilty to a blow against the drug problem."), *cert. denied*, 441 U.S. 910, 99 S.Ct. 2005, 60 L.Ed.2d 380 (1979); *United States v. Barker*, 553 F.2d 1013, 1025 (6th Cir.1977) ("[I]t is beyond the bounds of propriety for a prosecutor to suggest that unless this defendant is convicted it will be impossible to maintain 'law and order' in the jurors' community."); *cf. State v. Smart*, 278 S.C. 515, 526, 299 S.E.2d 686, 692–93 (1982) (finding solicitor's closing argument urging that "law officers who risked their lives in [the defendant's] recapture would be aggrieved by a sentence less than death" and implying that "other citizens of Lexington County including himself would strongly disapprove of a life sentence," to be improper, noting that *"[j]urors are simply not to consider the opinions of neighbors, officials or even other juries "*) (emphasis added), *cert. denied*, 460 U.S. 1088, 103 S.Ct. 1784, 76 L.Ed.2d 353 (1983), *overruled in part on other grounds by State v. Torrence*, 305 S.C. 45, 406 S.E.2d 315 (1991); *United States v. Radka*, 904 F.2d 357, 361 (6th Cir.1990) ("Despite the devastation wrought by drug trafficking in communities nationwide, we cannot suspend the precious rights guaranteed by the Constitution in an effort to fight the 'War on Drugs.' ").

Far more troubling to this Court, however, is that the argument insinuated that the reasonable doubt standard is itself a threat to "law and order." The reasonable doubt standard

plays a vital role in the American scheme of criminal procedure. It is a prime instrument for reducing the risk of convictions resting on factual error. The standard provides concrete substance for the presumption of innocence—that bedrock "axiomatic and elementary" principle whose "enforcement lies at the foundation of the administration of our criminal law."

*In re Winship*, 397 U.S. 358, 363, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) (citations omitted). To argue that the jury should ignore reasonable doubt because it was being used as "a sword to attack law and order" amounts to an argument that the jury should ignore the instructions of the trial court, as well as the constitutions of this State and this country, by convicting without regard to the existence of reasonable doubt. Thus, the argument effectively forced the jurors to decide between "law and order" or a finding of reasonable doubt. Needless to say, such an argument is improper and well beyond the bounds of zealous advocacy. *See Floyd v. Meachum*, 907 F.2d 347, 354 (2d Cir.1990) ("[T]he prosecutor's repeated remarks that the Fifth Amendment was 'a protection for the innocent' and not 'a shield' for 'the guilty' incorrectly stated the law by diluting the State's burden of proof beyond a reasonable doubt and undermining the presumption of innocence.... The prosecutor's statements, if taken literally, would mean that a guilty person could never be acquitted on the basis of the presumption of innocence, and as a result of these misstatements, the jurors may have thought they were free to convict Floyd if they somehow felt or suspected he was guilty even if they were not convinced beyond a reasonable doubt."); *see also Connecticut v. Floyd*, 10 Conn.App. 361, 523 A.2d 1323, 1337 (Ct.App.1987) ("The requirement of proof beyond a reasonable doubt for a conviction is neither a sword, nor a shield, but a necessary element of proof placed solely upon the prosecution.") (Bieluch, J., dissenting).

Not all improper closing arguments, however, mandate reversal. "A new trial will not be granted unless the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *State v. Huggins*, 325 S.C. 103, 107, 481 S.E.2d 114, 116 (1997). When making this determination, we must "review the alleged

impropriety of argument in the context of the entire record."
*State v. Linder,* 276 S.C. 304, 312, 278 S.E.2d 335, 339 (1981).

There is no doubt that the evidence against the Defendants was very strong and that there was no tangible evidence supporting their defense. Instead, their defense depended largely on inconsistencies brought by their attorneys during cross-examination of the State's witnesses and inferences suggested by the attorneys in their closing arguments. Nonetheless, particularly in light of the evidence establishing that an additional, empty box was found in Brank's van when SLED retrieved the drugs and that this box mysteriously disappeared and was never accounted for · by SLED, the suggestion that Brank planted the cocaine as an attempt to curry favor with law enforcement was not wholly implausible. Because the prosecutor's improper argument invited the jury to disregard the reasonable doubt standard, we believe that the argument prevented the jury from fairly considering and evaluating the defense put forth by the Defendants. *See State v. Coleman,* 301 S.C. 57, 61, 389 S.E.2d 659, 661 (1990) ("The trial judge is vested with broad discretion in dealing with the propriety of the solicitor's closing argument and once he has allowed the argument to stand, the appellant bears the burden of demonstrating *the argument had the effect of denying him a fair determination of the issues involved.*") (emphasis added); *cf. State v. Pickens,* 320 S.C. 528, 531, 466 S.E.2d 364, 366 (1996) (Solicitor's single reference during closing argument to the defendant's failure to present evidence required reversal because the "exculpatory story of self-defense was not totally implausible and the evidence of guilt was not overwhelming.").[3]

Contrary to the State's argument, we cannot conclude that the prejudice caused by the improper argument was cured by a subsequent instruction to the jury. After the prosecutor made what appeared to be a comment on the

---

3. That the jury acquitted Bouzy does not change our conclusion. The State's evidence against Bouzy was very weak and completely circumstantial. The jury very easily could have acquitted Bouzy without even considering the Defendants' suggestion that the drugs had been planted by Brank.

Defendants' failure to testify, the trial court instructed the jury that a defendant is

> presumed to be innocent until you, the jury, hears evidence that satisfies you of his guilt beyond a reasonable doubt. And the burden of proof is always on the State to prove the defendant guilty beyond a reasonable doubt, and the defendant is not required to prove himself innocent. That is the law, and I would explain that to you in my charge a little bit further. But anything to the contrary that's been indicated in the arguments, you disregard that.

First, the instruction was directed to the prosecutor's statement suggesting that the Defendants had an obligation to put forth evidence in their defense; the instruction really does nothing to eliminate the prejudice from the prosecutor's reasonable-doubt-as-a-sword argument. Moreover, given that the prosecutor's argument effectively invited the jury to disregard the trial court's instructions on reasonable doubt, we fail to see how another instruction mentioning reasonable doubt could have cured the error. Accordingly, we conclude that the prejudice from the prosecutor's improper argument was not cured by the court's instruction to the jury.

While there is no indication that the prosecutor in this case intended to inflame the jury or to prejudice the Defendants' case, we do not find the absence of intent to be relevant. Because the prosecutor's arguments encouraged the jury to disregard the most fundamental aspect of our criminal justice system, we conclude that reversal is required, notwithstanding the fact that the argument may have been the result of unintentional, overzealous rhetoric. *See Berger v. United States,* 295 U.S. 78, 88–89, 55 S.Ct. 629, 79 L.Ed. 1314 (1935) (A prosecutor "may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one."); *California v. Bolton,* 23 Cal.3d 208, 152 Cal.Rptr. 141, 589 P.2d 396, 398 (1979) ("Injury to appellant is nonetheless an injury because it was committed inadvertently rather than intentionally.").

Under these circumstances, we can reach no other conclusion but that the improper argument "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Huggins*, 325 S.C. at 107, 481 S.E.2d at 116. Accordingly, for the foregoing reasons, we hereby reverse the convictions of the Defendants and remand for a new trial.[4]

**REVERSED AND REMANDED.**

HOWELL, C.J., HUFF and HOWARD, JJ., concur.

---

4. Given our disposition of this issue, we need not address the other issues raised by the Defendants. The trial court is free to consider those issues *de novo* should they arise on retrial.