THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
The State,       
Respondent
 
 
 

v.

 
 
 
Aubin Liberte,       
Appellant.
 
 
 

Appeal From Greenville County
Larry R. Patterson, Circuit Court Judge

Unpublished Opinion No. 2003-UP-463
Submitted April 7, 2003  Filed July 
 8, 2003

AFFIRMED

 
 
 
Chief Attorney Daniel T. Stacey, of S.C. Office of Appellate 
 Defense, of Columbia, for Appellant.
Attorney General Henry Dargan McMaster, Chief Deputy Attorney 
 General John W. McIntosh, Chief, State Grand Jury Robert E. Bogan, and Assistant 
 Attorney General Tracey C. Green, all of Columbia, for Respondent.
 
 
 

PER CURIAM:  A jury convicted Aubin Liberte 
 of one count of trafficking in cocaine and one count of conspiracy to traffic 
 cocaine.  Liberte argues the trial court:  (1) lacked subject matter jurisdiction 
 to prosecute him because the indictments against him were not properly before 
 the State Grand Jury; (2) erred in failing to instruct the jury fully on circumstantial 
 evidence; and (3) erred in allowing the jury to use transcriptions of audio 
 tapes admitted into evidence.  We affirm.
FACTS
On October 8, 1996, the State Grand Jury indicted 
 Liberte for conspiracy to traffic cocaine.  Liberte and his co-defendant, William 
 Sims, were tried before a jury and found guilty.  This Court reversed Libertes 
 and Simss convictions and remanded for a new trial based on improper remarks 
 made by the prosecutor during his closing argument and the trial judges failure 
 to grant a mistrial.  State v. Liberte, 336 S.C. 648, 521 S.E.2d 744 
 (Ct. App. 1999).   
On November 9, 1999, the State Grand Jury returned 
 a superseding indictment for conspiracy to traffic cocaine as alleged in the 
 1996 indictment as well as an additional count of trafficking in cocaine.  Liberte 
 was tried before a jury in April 2000 and found guilty of both charges.  
During the trial, the State presented the following 
 testimony and evidence.     Following his arrest resulting from the sale of 
 ten ounces of cocaine to a confidential informant, Todd Brank, a convicted drug 
 dealer, agreed to cooperate with the South Carolina Law Enforcement Division 
 (SLED) and set up a drug transaction with his dealer, William Sims.  Brank arranged 
 to meet with Sims at a Greenville restaurant and purchase three kilograms of 
 cocaine.  Prior to this meeting, Brank was equipped with a surveillance wire 
 and a micro cassette recorder to monitor and record the transaction.  The SLED 
 agents also searched Brank and his vehicle to ensure that he did not have any 
 illegal drugs before meeting Sims.  Brank waited for Sims in an empty parking 
 lot at the agreed upon location.  When Sims arrived, Brank noticed that he was 
 not alone in the vehicle.  Liberte, who Brank had never met or purchased drugs 
 from before, was sitting in the passenger seat of Simss vehicle. 
Sims approached Branks vehicle.  Brank informed 
 Sims that he did not have the money for the cocaine but that he would get the 
 money.  According to Brank, Sims returned to his vehicle and retrieved a cardboard 
 box through the passenger window.   He then took the box to Branks vehicle.  
 At this time, Brank heard Liberte say to Sims that Brank could keep it, implying 
 that Brank could take the drugs and return with the money later in the afternoon.  
 After leaving the restaurant, Brank immediately drove to another location to 
 meet with the SLED agents.  They removed the cardboard box from Branks vehicle 
 and discovered the box contained three kilograms of cocaine.
During this time, several agents followed Sims and Liberte.  
 When Sims and Liberte stopped at a nearby restaurant, Sims contacted Brank to 
 inform him of where he could meet them with the drug money.  Instead of sending 
 Brank into the restaurant, Agents Skip Whitmire and Ben Moore went in and approached 
 Sims and Liberte.   Agent Whitmire told them he wanted to discuss the drug transaction 
 that just took place.  Several other agents then transported Sims and Liberte 
 to a local hotel where both Sims and Liberte gave statements.  In his statement, 
 Liberte admitted to being in the vehicle when Sims met Brank.  Liberte, however, 
 informed the agents that the cardboard box Sims gave to Brank was already in 
 Simss vehicle when he got into the vehicle.  Liberte denied having any knowledge 
 that Sims was delivering drugs to Brank. 
A search of Libertes person revealed several items, including 
 an identification card that listed New York as Libertes residence; a paper 
 with notations for Amtrak, $151, and 4:30 a.m.; a paper with notations 
 for Greyhound, Penn Station, departs 2:10 p.m; a paper with several names 
 and phone numbers, including Simss phone number and a number for the Ramada 
 Inn; and a phone card.  Based on their investigation, the agents believed these 
 notations corresponded with Libertes travel arrangements immediately before 
 the drug transaction.
While Liberte was being transported from the 
 restaurant to the hotel, he attempted to destroy a piece of paper with a hotel 
 room number written on it.  When Agent Whitmire questioned him about the hotel 
 room, Liberte stated he had rented room number 221 at the Ramada Inn.  Liberte 
 consented to a search of the hotel room as well as his apartment.  Several agents 
 went to the hotel room, but discovered the correct room number was 225.   A 
 man named Bouzy answered the door to room 225.  Bouzy consented to a search 
 of the room.  During the search, the agents discovered a brown sack inside a 
 drawer.  The sack contained 250 grams of cocaine.  Bouzy denied the cocaine 
 belonged to him.  Agents also discovered two bags in the room, which Bouzy indicated 
 belonged to Liberte.  The luggage contained an electronic organizer that listed 
 both Bouzy and Simss telephone numbers.   
Liberte did not testify at trial.  The jury convicted 
 him of trafficking in cocaine and conspiracy to traffic cocaine.  The trial 
 judge sentenced him to twenty-seven years imprisonment for each charge.  The 
 sentences were to be served concurrently.  Liberte appeals.
DISCUSSION
 I.                  
Subject Matter Jurisdiction 
 
Liberte argues the trial court erred in failing to 
 grant his motion to quash the superseding indictment.  He contends the court 
 was without subject matter jurisdiction to prosecute him because the indictment 
 was invalid.  He asserts the procedure for issuing the superseding indictment 
 was in violation of the jurisdictional limitations provided by the State Grand 
 Jury Act, specifically sections 14-7-1630(C) and 14-7-1690. 
 [1]   He claims the statute was violated in the following respects:  (1) 
 the investigation lasted beyond the statutorily proscribed two-year term; and 
 (2) the investigation was transferred from one state grand jury to a subsequent 
 state grand jury.  
In a pre-trial hearing on March 24, 2000, defense 
 counsel for Sims and Liberte moved to quash the superseding indictment.  Counsel 
 asserted the defendants were being prosecuted for more charges than which they 
 had originally been indicted and tried.  Counsel for the State informed the 
 court that he had petitioned for the presiding judge of the State Grand Jury 
 to re-open the case after it was remanded and that this motion had been granted. 

In response to counsels arguments, the court referred 
 to the November 10, 1999 order of the circuit court judge who presided over 
 the 1999 State Grand Jury.  This order stated in pertinent part:

The State Grand Jury of South Carolina returned a True Bill 
 of Superseding Indictment in the above case on November 10, 1999.  The Superseding 
 Indictment is within the authority of the State Grand Jury and is otherwise 
 in accordance with the provisions of the State Grand Jury Act, found in S.C. 
 Code Ann. §§ 14-7-1600 to 1820 (Law. Co-op. 1976).

The judge held he could not overrule another circuit 
 court judges order.  After a motion to sever was granted, counsel for Liberte 
 raised this issue again immediately prior to trial. The judge reiterated his 
 prior ruling. 
Recently, this Court addressed the same 
 issue in State v. Follin, 352 S.C. 235, 573 S.E.2d 812 (Ct. App. 2002), 
 cert. denied (May 30, 2003).  In Follin, the State Grand Jury 
 began investigating the matter in 1997.  The investigation against Follin was 
 presented to different panels of the State Grand Jury.  In 1998, the State Grand 
 Jury heard evidence in the case, but was discharged in 1999 before issuing an 
 indictment.  Subsequently, the 1999 State Grand Jury indicted Follin for criminal 
 conspiracy.  On January 11, 2000, the State Grand Jury issued a superseding 
 indictment that charged Follin with criminal conspiracy, larceny by trick, embezzlement, 
 obtaining goods and services by false pretenses, receiving stolen goods, and 
 obstruction of justice.  Id. at 242-43, 573 S.E.2d at 816.  Ultimately, 
 a jury convicted her of aiding and abetting embezzlement, conspiracy, and obtaining 
 goods and services by false pretenses.  Id. at 239, 573 S.E.2d at 814.  
 On appeal, Follin raised several issues, including the assertion that the court 
 lacked subject matter jurisdiction because the indictments were invalid.  Follin 
 argued the State Grand Jury was without power to issue the indictments against 
 her because the investigation lasted longer than two years and was transferred 
 from one State Grand Jury to two subsequent State Grand Juries in violation 
 of the governing statute.  Id. at 242, 573 S.E.2d at 815-16.   
This Court rejected Follins argument, holding 
 the State Grand Jury has subject matter jurisdiction to issue indictments 
 in factual scenarios involving: (1) an investigation lasting longer than two 
 years; or (2) an investigation transferred from one State Grand Jury to a subsequent 
 State Grand Jury.  Id. at 247, 573 S.E.2d at 818.
In reaching this conclusion, we reviewed 
 cases discussing the transfer of investigations to subsequent county grand juries 
 as well as the legislative intent of the State Grand Jury Act.  Based on these 
 authorities, we found:  

[T]he statute does not limit the number of times the State 
 may submit a matter for investigation to the State Grand Jury.  In contrariety, 
 there is clear indication the legislature intended the State to have the ability 
 to resubmit a matter to a subsequent grand jury, especially in cases such as 
 this where the investigation is very complex.  

Id. at 247, 573 S.E.2d at 818.  This Court 
 also recognized this conclusion was supported by applicable federal law and 
 the decisions of other jurisdictions.  Id. 
In light of our decision in Follin, 
 we find the November 1999 State Grand Jury had the authority to issue the November 
 1999 superseding indictment against Liberte even though the 1996 State Grand 
 Jury previously indicted him based on an investigation of the same criminal 
 activity.  Accordingly, the circuit court was vested with subject matter jurisdiction, 
 by means of a valid indictment, to prosecute Liberte for trafficking in cocaine 
 and conspiracy to traffic cocaine.
 II.               
Jury Instruction 
 
Liberte argues the trial court erred in charging the jury.  
 Specifically, Liberte contends the court erred in failing to charge the jury 
 that the State must prove each circumstance beyond a reasonable doubt.  
The court provided the jury the following instructions 
 with regard to direct and circumstantial evidence:

[T]here are two types of evidence which are generally presented 
 during a trial, direct evidence and circumstantial evidence.  Direct evidence 
 is the testimony of a person who asserts or claims to have actual knowledge 
 of a fact, such as an eyewitness.  Circumstantial evidence is proof of a chain 
 of facts and circumstances indicating the existence of a fact.  The law makes 
 absolutely no distinction between the weight or value to be given to either 
 direct or circumstantial evidence, nor is a greater degree of certainty required 
 of circumstantial evidence than of direct evidence.  You should weigh all of 
 the evidence in the case.  After weighing all the evidence in the case, if you 
 are not convinced of the guilt of the defendant beyond a reasonable doubt, you 
 must find the defendant not guilty.

At the conclusion of the charge, Libertes counsel 
 requested a fuller charge on circumstantial evidence.  Specifically, he requested 
 the court to: go back over the circumstantial evidence charge and make it clear 
 to the jury, because I dont think it was, that if the State is going to have 
 circumstantial evidence, they have to prove each circumstance beyond a reasonable 
 doubt.  The court denied Libertes request based on the fact that he 
 provided the jury with instructions outlined by our Supreme Court in State 
 v. Grippon, 327 S.C. 79, 489 S.E.2d 462 (1997).  In Grippon, our 
 Supreme Court approved and recommended a jury instruction for direct and circumstantial 
 evidence where a criminal case relies in whole or in part on circumstantial 
 evidence and the court gives a proper reasonable doubt instruction.  Grippon, 
 327 S.C. at 83-84, 489 S.E.2d at 464; see State v. Graddick, 345 
 S.C. 383, 388, 548 S.E.2d 210, 212 (2001) (Grippon recommended a circumstantial 
 evidence charge which emphasizes the lack of distinction between the weight 
 to be given to direct and circumstantial evidence.).
A jury charge is correct if, when the charge 
 is read as a whole, it contains the correct definition and adequately covers 
 the law.  In re McCracken, 346 S.C. 87, 94, 551 S.E.2d 235, 239 (2001) 
 (quoting Keaton ex rel. Foster v. Greenville Hosp. Sys., 334 S.C. 488, 
 496, 514 S.E.2d 570, 574 (1999)).  To warrant reversal, a trial courts refusal 
 to give a requested jury charge must be both erroneous and prejudicial to the 
 defendant.  State v. Hughey, 339 S.C. 439, 450, 529 S.E.2d 721, 727 (2000), 
 cert. denied, Hughey v. South Carolina, 531 U.S. 946 (2000).
Although the additional charge requested by Liberte 
 is a correct statement of the law 
 [2] and, thus, an appropriate jury instruction, this Court has recently 
 held that where the trial court provides the approved Grippon charge 
 there is no error in failing to provide additional instruction with regard to 
 circumstantial evidence.  State v. Cherry, 348 S.C. 281, 287, 559 S.E.2d 
 297, 299 (Ct. App. 2001), cert. granted (Nov. 7, 2002).   In Cherry, 
 the trial court charged the jury with the recommended charge from Grippon.  
 At the completion of the jury charge, defense counsel requested the court issue 
 a charge on the difference between direct and circumstantial evidence.  The 
 court declined to re-charge the jury with this request.   On appeal, this Court 
 found the court did not err in instructing the jury on the law of circumstantial 
 evidence.  We recognized that Cherrys requested instruction was a legally 
 correct and appropriate jury instruction; however, we could not fault the 
 trial court for utilizing a charge recently and specifically approved by the 
 supreme court.  Id. at 287, 559 S.E.2d at 299.
Here, the trial court charged the jury the language 
 that our Supreme Court approved and, in fact, recommended in Grippon.  
 Moreover, the court defined reasonable doubt and repeatedly instructed the State 
 had the burden of proving the defendant guilty beyond a reasonable doubt.  Accordingly, 
 we find no error in the trial courts refusal to charge the instructions requested 
 by Liberte.  See State v. Needs, 333 S.C. 134, 156 n.13, 508 S.E.2d 
 857, 868 n.13 (1998) (recognizing the Supreme Court has identified two appropriate 
 ways to charge circumstantial evidence). 
 III.             
 Jurys use of transcripts of tape
Liberte argues the trial court erred in overruling his objection 
 to the jurys use of transcripts of tapes admitted into evidence.  He asserts 
 the providing of the transcript placed undue emphasis upon the critical states 
 contention in this case, which impermissibly bolstered the states evidence.   
 He specifically points to the words keep it, referencing the three kilos of 
 cocaine, as being attributed to him.  We find this issue is not preserved for 
 our review. 
During trial, the State played audiotapes of 
 Brank purchasing the cocaine from Sims.  The State presented an enhanced version 
 of the tape as well as the original version. The States witness testified he 
 enhanced the tape by eliminating the background noises.  The trial court 
 allowed the State to provide the jury with transcripts of the tapes to read 
 while they were listening to the tapes during the trial.  The court did not 
 permit the jury to use the transcripts during deliberations.
At trial, Liberte objected to the use of the transcripts 
 on the ground the tapes were the best evidence of what was said in the recorded 
 conversation.  Liberte requested the jurors be instructed that thats the States 
 interpretation of the tape, because we do differ on some of the things - - -.  
 The court overruled Simss objection, stating As I understand it, yall have 
 had a chance to look at the transcript and listen to the tapes.  If theres 
 anything different on there, and you want to point it out to me, Ill--the State--the 
 tapes would be the best evidence. 
Liberte at no time made any statements or presented 
 any argument regarding any discrepancy on the tape.  Furthermore, Liberte did 
 not make any argument that the use of the transcripts would bolster the States 
 version of the contents of the tapes.  Accordingly, we will not consider these 
 arguments on appeal.  See State v. Dickman, 341 S.C. 293, 534 
 S.E.2d 268 (2000) (holding a party may not argue one ground at trial and an 
 alternate ground on appeal); State v. Perez, 334 S.C. 563, 514 S.E.2d 
 754 (1999) (holding issues not raised to and ruled upon in the trial court will 
 not be considered on appeal).  
Even if this issue were properly preserved, 
 the trial court did not abuse its discretion in allowing the jury to review 
 the transcripts during the trial while the tape was being played.  See 
 State v. Gulledge, 277 S.C. 368, 287 S.E.2d 488 (1982) (holding trial 
 court abused its discretion in permitting the jury to take a transcript of a 
 tape into the jury room because it unduly emphasized that evidence); see 
 also State v. Brazell, 325 S.C. 65, 480 S.E.2d 64 (1997) (stating 
 trial court has considerable latitude in ruling on admissibility of evidence 
 and its decision will not be disturbed absent prejudicial abuse of discretion).   
 Significantly, the court did not allow the jury to use the transcripts during 
 the deliberations.  The court also instructed the jury regarding their role 
 in finding facts based on the evidence introduced at trial.  In terms of the 
 accuracy of the transcripts, Brank acknowledged it is a true and accurate reflection 
 of what was recorded on the tapes.  The States witness who enhanced the tape 
 also testified he did not add anything to the tape.   
CONCLUSION
Based on the foregoing analysis, Libertes 
 convictions are 
 AFFIRMED.
CONNOR, ANDERSON and HUFF, JJ., concur.

 
 [1]   Section 14-7-1630(C) provides:
 
 (C) The impaneling judge, after due consideration of the petition, 
 may order the impanelment of a state grand jury in accordance with the petition 
 for a term of twelve calendar months.  Upon petition by the Attorney General, 
 the then chief administrative judge of the judicial circuit in which a state 
 grand jury was impaneled, by order, may extend the term of that state grand 
 jury for a period of six months but the term of that state grand jury, including 
 any extension thereof, shall not exceed two years.
 
 S.C. Code Ann. § 14-7-1630(C) (Supp. 2002).
 Section 14-7-1690 provides:
 
 Once a state grand jury has entered into a term, the petition 
 and order establishing same may be amended as often as necessary and appropriate 
 so as to expand the areas of inquiry authorized by the order or to add additional 
 areas of inquiry thereto.  The procedures for amending this authority are 
 the same as those for filing the original petition and order.
 
 S.C. Code Ann. § 14-7-1690 (Supp. 2002); see also 
 S. C. Code Ann. §§ 14-7-1600 to 1820 (Supp. 2002) (the State Grand Jury 
 Act).

 
 
 [2]   Libertes request to charge is based on our Supreme Courts language 
 in State v. Edwards, 298 S.C. 272, 379 S.E.2d 888 (1989).  The Edwards 
 charge distinguishes between direct and circumstantial evidence.  Edwards, 
 298 S.C. at 275, 379 S.E.2d at 889 ([E]very circumstance relied upon by 
 the State [must] be proven beyond a reasonable doubt; and . . . all of the 
 circumstances so proven be consistent with each other and taken together, 
 point conclusively to the guilt of the accused to the exclusion of every other 
 reasonable hypothesis.  (quoting State v. Littlejohn, 228 S.C. 324, 
 328, 89 S.E.2d 924, 926 (1955))).