728 S.E.2d 492

**The STATE, Respondent,**

v.

**David Lee MEGGETT, Appellant.**

**No. 4994.**

Court of Appeals of South Carolina.

Heard June 5, 2012.

Decided June 27, 2012.

518

Appellate Defender Breen R. Stevens, of Columbia, for Appellant.

Attorney General Alan M. Wilson, Chief Deputy Attorney General John W. McIntosh, Senior Assistant Deputy Attorney General Salley W. Elliott, and Assistant Attorney General Mark R. Farthing, all of Columbia; Solicitor Scarlett Anne Wilson of Charleston, for Respondent.

LOCKEMY, J.

David Meggett appeals his convictions of first-degree burglary and first-degree criminal sexual conduct (CSC). Meggett argues the trial court erred in (1) denying his motion for a continuance; (2) denying his motion for a mistrial and request for a curative instruction; and (3) denying his motion for a directed verdict as to the first-degree burglary charge. We affirm.

## FACTS/PROCEDURAL BACKGROUND

Meggett and the Victim met in Charleston County in 2008. The two saw each other every few months. Meggett loaned Victim $200 to pay her bills and gave her rides to job interviews. Victim and Meggett had consensual sex in August 2008. Victim left Charleston in 2008 and returned in January 2009 to attend school. According to Victim, in the early morning hours of January 13, 2009, she woke up and saw Meggett sitting on the edge of her bed. Victim had not spoken to Meggett in a month and, according to Victim, he did not have permission to be in her home. The doors to Victim's home were not locked. According to Victim, Meggett asked her about the $200 she borrowed and Victim told him she would pay him at the end of the week. Meggett then moved towards the Victim and told her he was going to "take the down payment now." According to Victim, Meggett then grabbed her neck, held her against the wall, and attempted to remove her pants. Victim claimed she and Meggett struggled and she yelled for him to stop. Victim claimed Meggett choked her and then sexually assaulted her.

After Meggett left Victim's home, Victim drove herself to the hospital. Victim informed emergency room physician Dr. Joseph Bianco that she had been sexually assaulted and complained of pain in her arm and jaw. Dr. Bianco noted bruises on Victim's arm and jaw.[1] The North Charleston Police Department was notified and two officers were dispatched to the hospital. Officer Robert Gooding and Sergeant Eric Jourdan met with Victim and she reported the details of the assault. While speaking with the officers, Victim received

---

1. North Charleston Police Detective Randy Gray met with Victim the day after the incident and observed "prominent dark bruising" on Victim's neck.

a phone call from Meggett. According to Victim, Meggett tried to convince her to leave the hospital and asked her if she was going to tell the doctors what happened. Meggett then asked if he could come to the hospital to see Victim and she agreed. Upon his arrival, Meggett was arrested by Officer Gooding.

Victim was subsequently taken to MUSC Women's Center for a sexual assault examination. Nurse Faye LeBoeuf performed a pelvic exam and discovered a small abrasion in Victim's vagina which likely had occurred within twenty-four to seventy-two hours of the exam. According to LeBoeuf, Victim's injury could have resulted from either consensual or non-consensual intercourse. LeBoeuf found no other bruising, redness, swelling, lacerations, or tears on Victim.

Officers retrieved a comforter and blanket from Victim's bed, as well as a DNA sample from Meggett. South Carolina Law Enforcement Division (SLED) DNA analyst Jennifer Clayton examined the Victim's comforter and determined Meggett was the major DNA contributor in two of the comforter samples and the only DNA contributor in the third sample. Clayton also determined Victim was excluded as a contributor in the samples and found the presence of an unknown contributor in the second sample. Additionally, Clayton analyzed the semen from Victim's vaginal sample and was unable to develop a DNA profile from Meggett in that sample.

Meggett was indicted by the Charleston County grand jury for first-degree burglary and first-degree CSC. A jury trial was held November 8–10, 2010. At the outset of trial, Meggett moved for a continuance. Defense counsel stated the parties agreed Meggett and Victim had consensual sex on one prior occasion but they disagreed as to whether the consensual sex was a single incident or a repeated event. Defense counsel asserted Meggett, on the morning of trial, raised the issue of having a comforter from his nephew's bed in his sister's home tested for DNA evidence based on Meggett's claim he had consensual sex with Victim in the bed in the months leading up to the incident. Defense counsel asserted the comforter was in storage and would be critical to the credibility of Victim if the evidence was there. In rebuttal,

the State argued the motion should be denied because (1) two years had elapsed since the incident; (2) Meggett had notice of the trial; and (3) Meggett failed to raise the issue until the morning of trial. The trial court denied the continuance motion, finding (1) the case was on the trial docket; (2) the incident occurred in January 2009; (3) it was speculative as to whether there may be something on the comforter; and (4) the comforter had no direct connection to the case other than to Victim and Meggett's prior sexual relationship.

During opening arguments, defense counsel argued to the jury that "[V]ictim and [Meggett] struck a sort of less than desirable but informal arrangement. They began to sleep together, and [Meggett] would forgive her debt, and it happened more than once." Defense counsel stated "[Victim and Meggett] had sex, and [Victim] thought that squared their debt, and [Meggett] didn't, and that's it." Defense counsel told jurors Meggett "shoved" and "pushed" Victim and his behavior was "wrong." As the trial continued, Victim and other witnesses testified about the sexual assault and resulting law enforcement investigation.

At the close of the State's case, Meggett moved for a directed verdict. Defense counsel asserted "there's a decent argument to be made for the burglary," and further argued "[t]he Victim testifies that when he comes in he's asking for the money that . . . she owes him. That would be all I have to say in that respect." The trial court denied Meggett's directed verdict motion, finding evidence had been presented as to each element of the indicted offenses. Following the trial court's ruling, Meggett did not testify, did not offer any other testimony, and rested his case.

Subsequently, during closing arguments, defense counsel asserted Victim was living in poor conditions and "desperate times call[ed] for desperate measures." During the State's closing argument, the solicitor stated

> In case after case involving CSC, there is one singular tactic that is employed by the defense, and I don't fault [defense counsel] for . . . doing it, but recognize it, and that is attack the victim. Attack the victim, call into question—and its fine that [defense counsel] stands up here and goes I don't mean to say anything. He—that's precisely what he means.

Her history of medication, the fact that she's poor, the fact that she lives in a house that doesn't really look like a middle class home. Calls her unstable, calls her a liar. In opening statement he implied, although there's no evidence of this, that somehow she's a prostitute, smear—

Defense counsel objected and argued the solicitor's statement amounted to burden shifting. Following closing arguments and the jury charge [2], the trial court heard defense counsel's objection. Defense counsel argued he did not use the word "prostitute" to describe Victim and claimed the solicitor's comment on the defense's failure to present evidence was burden shifting. Defense counsel then moved for a mistrial, moved for a curative instruction, and objected to the curative instruction given.[3] The trial court denied Meggett's mistrial motion and request for a curative instruction. The trial court determined the State's comments did not shift the burden of proof and the jury had twice been instructed that the statements of counsel during arguments were not to be considered as evidence. Subsequently, the jury found Meggett guilty of first-degree burglary and first-degree CSC. Meggett was sentenced to concurrent terms of thirty years imprisonment for each offense. This appeal followed.

## ISSUES ON APPEAL
1. Did the trial court err in denying Meggett's motion for a continuance?
2. Did the trial court err in denying Meggett's motion for a mistrial and request for a curative instruction?
3. Did the trial court err in denying Meggett's motion for a directed verdict as to the first-degree burglary charge?

## LAW/ANALYSIS
### Motion for Continuance
██ Meggett argues the trial court erred in denying his motion for a continuance. Specifically, Meggett maintains if

---

2. In its charge to the jury, the trial court instructed the jury a defendant is not required to prove his innocence; the State has the burden of proving guilt beyond a reasonable doubt; and Meggett's decision not to testify cannot be used against him.

3. It appears defense counsel considered the trial court's jury charge to be a curative instruction.

he had been allowed time to have the comforter from his sister's home tested for Victim's DNA he could have produced critical evidence to discredit Victim's testimony regarding their relationship and prior sexual encounters. We disagree.

The denial of a motion for a continuance is within the sound discretion of the trial court and will not be disturbed absent a showing of an abuse of discretion resulting in prejudice. *State v. Smith*, 387 S.C. 619, 622, 693 S.E.2d 415, 417 (Ct.App.2010). "An abuse of discretion arises from an error of law or a factual conclusion that is without evidentiary support." *State v. Geer*, 391 S.C. 179, 189, 705 S.E.2d 441, 447 (Ct.App.2010) (internal quotation marks omitted).

We do not believe the trial court abused its discretion in denying Meggett's motion for a continuance.

When a motion for a continuance is based upon the contention that counsel for the defendant has not had time to prepare his case its denial by the trial court has rarely been disturbed on appeal. It is axiomatic that determination of such motions must depend upon the particular facts and circumstances of each case.

*State v. Babb*, 299 S.C. 451, 454–55, 385 S.E.2d 827, 829 (1989) (quoting *State v. Motley*, 251 S.C. 568, 572, 164 S.E.2d 569, 570 (1968)). "Further, a party cannot complain of an error which his own conduct has induced." *Id.* at 455, 385 S.E.2d at 829 (citing *State v. Stroman*, 281 S.C. 508, 513, 316 S.E.2d 395, 399 (1984)). Here, nearly two years after he was arrested and seven months after he was notified the case would be placed on the trial docket, Meggett moved for a continuance to test the comforter. Meggett had a significant period of time to obtain the testing and his failure to do so was a result of his own inaction and not a lack of preparation time.

Furthermore, Meggett failed to offer any evidence or testimony to support his claim that probative evidence might be on the comforter. Meggett failed to offer any evidence to prove the comforter was put in storage shortly after he slept on it. Additionally, there was no evidence presented to show the comforter was not washed or cleaned in the two years prior to trial or that it was not used by anyone else. Accordingly, based on Meggett's inaction in attempting to obtain the comforter prior to requesting a continuance and the lack of

524

evidence supporting Meggett's contention that the comforter still contained important evidence, we find the trial court did not abuse its discretion in denying Meggett's continuance motion.

**Motion for Mistrial**

 Meggett argues the trial court erred in denying his motion for a mistrial and request for a curative instruction. We disagree.

 "The decision to grant or deny a mistrial is within the sound discretion of the trial court and will not be overturned on appeal absent an abuse of discretion amounting to an error of law." *State v. Bantan*, 387 S.C. 412, 417, 692 S.E.2d 201, 203 (Ct.App.2010). "The granting of a motion for mistrial is an extreme measure that should be taken only when the incident is so grievous the prejudicial effect can be removed in no other way." *Id.* "A mistrial should be granted only when absolutely necessary and a defendant must show both error and resulting prejudice to be entitled to a mistrial." *Id.*

Meggett contends the solicitor improperly commented on his right to remain silent in his closing argument. As previously noted, during the State's closing argument, the solicitor stated

> In case after case involving CSC, there is one singular tactic that is employed by the defense, and I don't fault [defense counsel] for . . . doing it, but recognize it, and that is attack the victim. Attack the victim, call into question—and it's fine that [defense counsel] stands up here and goes I don't mean to say anything. He—that's precisely what he means. Her history of medication, the fact that she's poor, the fact that she lives in a house that doesn't really look like a middle class home. Calls her unstable, calls her a liar. *In opening statement he implied, although there's no evidence of this, that somehow she's a prostitute,* smear—

Citing *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), Meggett argues the solicitor's comment violated the principle that the accused has the right to remain silent and the exercise of that right cannot be used against him. Meggett also contends the solicitor improperly commented on Meggett's failure to present a defense. *See McFadden v.*

*State,* 342 S.C. 637, 640, 539 S.E.2d 391, 393 (2000) (holding a solicitor must not comment, either directly or indirectly, on a defendant's silence, failure to testify, or failure to present a defense).

We find the trial court did not abuse its discretion in denying Meggett's mistrial motion. The solicitor's statement that there was no evidence Victim was a prostitute was a comment on the evidence, or lack thereof, presented during trial. The solicitor's comment did not improperly shift the burden of proof or suggest that Meggett's guilt could be inferred from his failure to testify or present a defense. The comment was made in reply to allegations defense counsel made in his opening and closing arguments that Meggett and Victim were involved in a sex-for-money arrangement. During opening arguments, defense counsel argued to the jury that "[V]ictim and [Meggett] struck a sort of less than desirable but informal arrangement. They began to sleep together, and [Meggett] would forgive her debt, and it happened more than once." In his closing argument, defense counsel asserted Victim was living in poor conditions and stated "desperate times call for desperate measures."

The solicitor did not state that Meggett failed to present *any* evidence or a defense. Furthermore, the solicitor did not suggest to the jury that an adverse inference should be drawn against Meggett based on his failure to present evidence or testify. The solicitor only commented on the lack of evidence presented to support the inference that Victim was a prostitute. The solicitor's remark was not improper as it was made to urge the jury to avoid drawing an inference not supported by the record. *See State v. Liberte,* 336 S.C. 648, 653, 521 S.E.2d 744, 746 (Ct.App.1999) (holding a solicitor is entitled to call into question the credibility of a defense). Additionally, because we find the solicitor's comment was not improper, we further find the trial court did not err in denying Meggett's motion for a curative instruction.

Meggett also argues on appeal that the solicitor's closing statement was improper because it injected extraneous facts and opinions into the case and appealed to the jury's emotions. Because Meggett failed to raise these arguments to the trial court, they are not preserved for our review. *See State v. Dunbar,* 356 S.C. 138, 142, 587 S.E.2d 691, 693 (2003) (holding

an issue must have been raised to and ruled upon by the trial judge to be preserved for appellate review).

**Motion for Directed Verdict**

█ Meggett argues the trial court erred in denying his motion for a directed verdict as to the first-degree burglary charge. Specifically, Meggett contends there was no evidence he intended to commit a crime at the time he entered Victim's home. We disagree.

█ "In reviewing the denial of a motion for a directed verdict, the evidence must be viewed in the light most favorable to the State, and if there is any direct evidence or any substantial circumstantial evidence reasonably tending to prove the guilt of the accused, an appellate court must find that the case was properly submitted to the jury." *State v. Kelsey*, 331 S.C. 50, 62, 502 S.E.2d 63, 69 (1998).

First-degree burglary is a statutory offense in South Carolina that is defined as follows: "A person is guilty of burglary in the first degree if the person enters a dwelling without consent and with intent to commit a crime in the dwelling," and any one of several enumerated aggravating circumstances exists. S.C.Code Ann. § 16–11–311(A) (2003). Aggravating circumstances include entering or remaining in the dwelling at night and causing physical injury to a person not participating in the crime. S.C.Code Ann. § 16–11–311(A)(1)(b), (3) (2003).

Citing *State v. Haney*, 257 S.C. 89, 92, 184 S.E.2d 344, 345 (1971), Meggett argues "inconsistent circumstances" indicating he had a different intent or motive for entering Victim's home other than that inferred from the crime committed are present after his entry into Victim's home. Meggett contends the inconsistent circumstances include: (1) he arrived at Victim's home at an unknown time between 6:00 p.m. and 12:45 a.m.; (2) he entered the unlocked doors of the house of his friend; (3) he waited for an undetermined amount of time for Victim to wake up; and (4) the first thing that happened after Victim woke up was not a rape but a conversation about the money Victim owed Meggett. According to Meggett, these specific circumstances are inconsistent with an inference that he intended to commit CSC the moment he crossed the threshold of Victim's home.

■■■■ We find the trial court did not err in denying Meggett's motion for a directed verdict as to the burglary charge. Substantial evidence was presented from which the jury could reasonably conclude Meggett possessed the intent to commit a crime at the time he entered Victim's home. Our supreme court has examined criminal intent:

> The question of the intent with which an act is done is one of fact and is ordinarily for jury determination except in extreme cases where there is no evidence thereon. The intent with which an act is done denotes a state of mind, and can be proved only by expressions or conduct, considered in the light of the given circumstances. Intent is seldom susceptible to proof by direct evidence and must ordinarily be proven by circumstantial evidence, that is, by facts and circumstances from which intent may be inferred.

*State v. Tuckness*, 257 S.C. 295, 299, 185 S.E.2d 607, 608 (1971) (citing *State v. Johnson*, 84 S.C. 45, 65 S.E. 1023 (1909)). Thus, whether a defendant possessed the requisite intent at the time the crime was committed is typically a question for jury determination because, without a statement of intent by the defendant, proof of intent must be determined by inferences from conduct. *See Haney*, 257 S.C. at 91, 184 S.E.2d at 345. In determining whether a defendant possessed the necessary criminal intent in a burglary case, a defendant's actions after he entered a dwelling can constitute evidence of his intent at the time of his unlawful entry. *State v. Pinckney*, 339 S.C. 346, 349, 529 S.E.2d 526, 527 (2000). In *Pinckney*, our supreme court explained this principle:

> For example, if a defendant entered a house and committed criminal sexual conduct (CSC), the jury could find him guilty of burglary even though there may not have been any specific evidence that at the time he entered the house he intended to commit CSC. His actions after entering the house (i.e. the commission of the CSC) would be evidence of his reason for entering the house and would at least support the denial of a directed verdict motion. *See e.g. State v. Faircloth*, 297 N.C. 388, 255 S.E.2d 366 (1979) (citing *State v. Tippett*, 270 N.C. 588, 155 S.E.2d 269 (1967) ("The intent with which an accused broke and entered may be found by

the jury from evidence as to what he did within the house.")).

*Pinckney,* 339 S.C. at 349–50, 529 S.E.2d at 527–28.

Here, Meggett entered Victim's home at night without permission. Moments after Victim woke up Meggett briefly brought up the outstanding debt and then sexually assaulted her. Viewing the evidence in the light most favorable to the State, we believe Meggett's actions after entering Victim's home supported a reasonable inference that Meggett possessed the intent to commit a crime at the time of entry. Accordingly, the question of Meggett's criminal intent was for the jury to decide, and therefore, we affirm the trial court's denial of Meggett's motion for a directed verdict.

**CONCLUSION**

Based on the foregoing, the trial court's decision is

**AFFIRMED.**

WILLIAMS and THOMAS, JJ., concur.